IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cv-__

STERRITT FULLER,

    Plaintiff,

vs.

ADAMS COUNTY SHERIFF'S OFFICE, CHIEF ROGER KELLY,
CAPT. GENE CLAPS, and CMDR. SCOTT MILLER

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Sterritt Fulller, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC, brings his complaint as follows:

1. Plaintiff Sterritt Fuller resides in Adams County, Colorado, and worked in the Adams County Sheriff's Office for 14 years. Defendant Adams County Sheriff's Office is an independent governmental entity formed under Colorado's Constitution. Chief Roger Kelly was the head of the Adams County jail at the time of the incident. Capt. Gene Claps was a captain in the chain of command above Mr. Fuller. Cmdr. Scott Miller was Mr. Fuller's immediate supervisor.

2. Mr. Fuller filed a charge with the EEOC for religious discrimination, retaliation based upon complaints of religious discrimination, and disability discrimination. Mr. Fuller exhausted his administrative remedies and the EEOC gave him a right to sue letter dated September 27, 2017. His complaint is timely filed.

3. Federal jurisdiction is proper in this court because Mr. Fuller has brought claims under the ADAAA, 42 USC §12101, *et seq.*, and under Title VII. Venue is proper because all actions occurred in Colorado.

4. Mr. Fuller began working for the Sheriff's office in June, 2002. Prior to working for the Sheriff's office, he had been a paralegal/legal assistant from 1990 through 2002.

5. He was promoted to the position of programs coordinator in approximately 2004-05. He was then promoted to the position of programs supervisor in approximately 2011. As part of his duties in that position he was to write policies for the inmates in the Adams County jail.

6. For the five years he was in this position, he always received satisfactory job reviews.

7. On June 8, 2016, Mr. Fuller's supervisor, Cmdr. Scott Miller, requested that Mr. Fuller write a policy providing free prayer rugs for any Muslim inmate. Mr. Fuller wanted to discuss this request and had a meeting with Cmdr. Miller, Chief Kelly, and Capt. Claps regarding the proposed new policy. This meeting lasted approximately 45-60 minutes.

8. In that meeting, Mr. Fuller was told that there would be no accommodations given to other religions, such as rosaries or yarmulkes. Mr. Fuller told them that such a policy favoring one religion would be unconstitutional because it would provide secondary religious objects to one religion, but not to another. He said he would not take part in such a policy.

9. Cmdr. Miller told Mr. Fuller that the jail already provided religious meals, religious books, and religious chaplains for the inmates. Mr. Fuller agreed but said that providing secondary religious objects, at government expense, to believers in only one religion would violate the Constitution.

10. At that time, the jail had a policy of not allowing inmates to have secondary religious objects.

11. Mr. Fuller said that he would have no objection if someone else were to write the policy because his objection was in taking part in what he considered to be an unconstitutional act.

12. Chief Kelly and Capt. Claps told Mr. Fuller that his fanatical Christian beliefs were interfering with his judgment and that he was making his argument because, under his Christian beliefs, he disapproved of Muslims. Mr. Fuller told them that this was not true and that his only objection to the policy was an unconstitutional religious favoritism paid by the state.

13. Chief Kelly said that if Mr. Fuller was not going to do his job, he needed to leave his position.

14. On the following day, June 9, 2016, Cmdr. Miller wrote a memo stating, "Effective immediately, inmates who profess the Islamic religion and request a 'Prayer Rug' will be issued a third towel to be used for that purpose. Requests should be made through the Programs Unit via the kite system."

15. Also on June 9, 2016, Capt. Claps placed Mr. Fuller on administrative leave with pay while Mr. Fuller was the subject of an internal affairs investigation.

16. Approximately one week later, Cmdr. Susan Nielsen, of the internal affairs division, interviewed Mr. Fuller as part of the internal affairs investigation. She told him that she was told that Mr. Fuller was a fanatical Christian and that this affected his judgment regarding the Muslim prayer rugs. Chief Kelly and Capt. Claps gave her this information to improperly influence her investigation.

17. In September, 2016, while the internal affairs investigation was on-going, Chief Kelly and Capt. Claps said they were trying to terminate Mr. Fuller. They maintained that he had had a "meltdown" on June 8, when he was discussing the prayer-rug policy and that Mr. Fuller "had it out for Muslims" because of his Christian beliefs.

18. The Sheriff's office has a policy of anti-retaliation. The policy states that "no member may retaliate against any person for engaging in lawful or otherwise permitted behavior; for opposing a practice believed to be unlawful, unethical, discriminatory or retaliatory; for reporting or making a complaint under this policy." This policy should have protected Mr. Fuller for his opposition to a practice he believed to be unlawful.

19. In October, 2016, Mr. Fuller was brought back to work, at his prior level of pay, but he was assigned to work as a detention specialist in the control room surrounded by inmate pods. He was placed on probation for three months. He knew that, while on probation, if he made any complaint he would be terminated.

20. His work in the control room immediately aggravated his degenerative disc disease and the arthritis in his knees because he had to stand most of the shift. His

prior position as the programs supervisor was a desk position and his medical condition did not interfere with this work. However, standing for a full shift was extremely painful.

21. He told both of his field training officers, Ryan Martinez and Ms. Danielle Leggett, of his extreme pain. They told him that Capt. Claps put Mr. Fuller in the detention specialist position to make him quit the department.

22. Mr. Fuller was unaware that his physical condition would qualify as a disability under the ADAAA. He believed that his only relief would be through the FMLA and he downloaded an FMLA medical certification form for his doctor to complete.

23. His doctor, Dr. Juanita Redfield, completed two certifications of health care provider under the FMLA. One was dated October 26, 2016, and the other was dated November 10, 2016. In both of the certifications, she stated that Mr. Fuller had "chronic back pain, cervical spine arthritis, [and] arthritis of knees." In the first certification, she said that Mr. Fuller could work a full schedule, but could not stand more than one hour per day and that he was not to lift over 30 pounds. In her second certification. She said that he was "able to work full schedule but restricted to 2 days per week with day off between shifts."

24. Mr. Fuller took the October 26 medical certification to Shannon Dennington, in the human resources department of the Sheriff's office. Human resources conveyed this to Unum, a third-party administrator for FMLA leave. No one told him that his physical complaints would qualify as a disability under the ADAAA and that he could ask for a reasonable accommodation for his disability.

25. Mr. Fuller took the November 10 medical certification to Mark Counterman, also in human resources. Unum initially rejected both of the medical certifications because they were on Department of Labor forms, and not on Unum's form. Unum eventually accepted the November form. No one at Unum and no one in the human resources department told Mr. Fuller of his rights under the ADAAA.

26. His degenerative disc disease and arthritis in his knees constituted a disability under the ADA, 42 USC §12111(2)(A), because it substantially affected his ability to stand, walk, and lift.

27. The Sheriff's office had available desk positions to which it could have assigned Mr. Fuller, but it did not do so. In fact, the Sheriff's office intentionally put Mr. Fuller in the detention specialist position to force him to resign.

28. On January 4, 2017, Mr. Fuller was officially demoted to detention specialist on grounds of insubordination and unsatisfactory performance. This demotion reduced his salary by approximately $20,000 per year from his salary as the programs supervisor.

29. When the Sheriff informed Mr. Fuller of this determination, the Sheriff again reiterated the mistaken opinion of defendants Kelly, Miller and Claps that Mr. Fuller was a fanatical Christian and that he could not impose his Christianity on inmates. He also restated the individual defendants' belief that Mr. Fuller's religious fanaticism interfered with his judgment.

30. Because Mr. Fuller's physical disabilities would not allow him to continue working on the floor, and because the Sheriff's office did not accommodate his serious

health condition, he was forced to resign effective January 30, 2017. Defendants had intentionally made plaintiff's work conditions intolerable for his health, so the separation of employment was a constructive discharge.

## First Claim

31. Mr. Fuller was disabled under the ADA, 42 USC §12102. He was qualified to work in the Sheriff's office and demoting him to working in the control room was meant to punish him and to force him to resign.

32. Under the ADA, 42 USC §12112(a), it is unlawful not to reasonably accommodate an employee's disability. The Sheriff's office violated this statute when it failed to reasonably accommodate Mr. Fuller by not assigning him to a desk job, to his prior position as programs coordinator, or otherwise to follow the recommendation of his doctor.

33. Mr. Fuller is entitled to back pay and front pay, compensatory damages, and reasonable attorney's fees and costs under §12117(a).

## Second Claim

34. Under Title VII, 42 USC §2000e-2(a)(1), it is unlawful to discriminate against Mr. Fuller because of his religion. The Sheriff's office violated this statute when it demoted and constructively discharged Mr. Fuller because of his Christian beliefs.

35. Mr. Fuller may recover his damages allowed in 42 USC §1981a, which include lost income, loss of benefits, and loss of participation in the Sheriff's office pension plan. He is also entitled to compensatory damages for emotional pain and suffering, including embarrassment, inconvenience, and loss of reputation.

36. Mr. Fuller is entitled to his attorney's fees and costs pursuant to 42 USC §2000e-5(k).

### Third Claim

37. Colorado has a public policy that no employer may require an employee to violate the constitutional rights of another.

38. The three individual defendants directed Mr. Fuller to write the policy allowing Muslims to have prayer rugs. Mr. Fuller refused to comply with this directive because he reasonably believed that to do so would violate the inmates' constitutional rights.

39. The individual defendants were aware, or reasonably should have been aware, that Mr. Fuller's refusal to comply with their directive was based on his reasonable belief that to do so would violate the inmates' constitutional rights. This alleged issue was easily resolved when Cmdr. Miller wrote the policy referenced in ¶ 14 above.

40. The individual defendants caused the constructive discharge of Mr. Fuller by transferring him to a position he could not physically perform.

41. The individual defendants acted willfully and wantonly. They acted willfully because they knew that Mr. Fuller had a valid reason to oppose their directive. They acted wantonly because the jail policy stated that no member of the jail's staff may retaliate against any person for opposing a practice believed to be unlawful. Notwithstanding this policy, the individual defendants retaliated against Mr. Fuller because he opposed a practice he reasonably believed to be unlawful.

42. Mr. Fuller has been damaged by lost income and lost benefits, including the lost value of participating in his pension. He has also suffered emotional pain and suffering, including embarrassment, inconvenience, and loss of reputation in his professional field.

WHEREFORE, plaintiff Sterritt Fuller respectfully requests that this Court enter judgment in his favor and for interest, costs, attorney's fees, and such other relief as this Court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this November 27, 2017.

By:  s/   *Robert M. Liechty*
Robert M. Liechty
ROBERT M LIECHTY PC
5105 DTC Parkway, Suite 475
Greenwood Village, Colorado 80111
Tel: (303) 830-0500
Fax: (303) 860-7855
Email:  rliechty@crossliechty.com
ATTORNEY FOR PLAINTIFF

Address of plaintiff:
1001 Quail Circle
Brighton, CO  80601